```
                                              FILED
                                              Mar 23 2021
                                        CLERK, U.S. DISTRICT COURT
                                        SOUTHERN DISTRICT OF CALIFORNIA
                                        BY    s/ zenobiaa    DEPUTY
```

Victoria Amelina
Michael Sapelkin
1355 Nicolette Ave Unit 1313
Chula Vista, CA 91913
619-721-3302
vita.amelina@gmail.com

*Plaintiffs Pro Se*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Victoria A. Amelina and<br>Michael S. Sapelkin, husband and wife,<br><br>    Plaintiffs,<br><br>vs.<br><br>Selene Finance LP, a Delaware Limited Partnership Company; Joe Davila, President and Chief Executive Officer at Selene Finance LP, individually as an officer and policymaker of the company; Hilary Jackson, Chief Operating Officer at Selene Finance LP, individually as an officer and policymaker of the company;<br><br>    Defendants, | Case No.: Number **'21CV512 CAB LL**<br><br>COMPLAINT FOR DAMAGES<br><br>JURY TRIAL DEMAMNED |

## INTRODUCTION

1. Almost 50 years ago, the United States Congress recognized the urgent need to protect consumers from certain abusive financial practices in the area of Real Estate and passed the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. 2601 et seq., (hereinafter "RESPA") in an effort to establish rules of the road and give consumers adequate tools to combat the abuse perpetuated on them on the nationwide scale.

PAGE 1 OF 13

After each Real Estate financial meltdown, RESPA was amended and enhanced in an effort to keep up with ever-developing fraud and abuse techniques designed and implemented for profit by the best and brightest of America up on the Wall Street in New York City.

2. Additionally, the United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy. Congress passed the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (hereinafter "FDCPA"), to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

3. Finally, early in 2020, in the face of the upcoming worldwide COVID-19 emergency, the United States Congress urgently passed Coronavirus Aid, Relief, and Economic Security Act (hereinafter the "CARES Act"), which was enacted on March 27, 2020, as Public Law 116-136, in an effort to adjust to the new reality around us. The CARES Act was designed, in part, to avoid massive wave of mortgage defaults, foreclosures, and evictions in the middle of the pandemic and corresponding housing and overall econimic collapce. In urgently passing the CARES Act, US Congress rightfully concluded that there is no education in the 3rd housing meltdown in two decades.

4. This action arises out of blatant violations of RESPA, FDCPA and CARES Act by Defendants.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1331 because this is a federal question pursuant to the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605, et seq., Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, et seq, the and the CARES Act.

6. Venue is proper pursuant to 28 U.S.C. § 1391 because Plaintiffs are residents of the District, the real property in quetion is located in the District, Defendants are licensed to do business in the District, and a substantial pan of the events and conduct giving rise to the violations of law complained of herein occurred in this District.

## PARTIES

7. Plaintiffs are natural persons residing in the City of Chula Vista, County of San Diego, and State of California.

8. Plaintiffs are "borrowers" as this term is defined in RESPA.

9. Plaintiffs are "consumers" as this term is defined in FDCPA.

10. Plaintiffs are "borrowers" as this term is defined in the CARES Act

11. Defendant Selene Finance LP ("Selene") is a Delaware LP, located at 9990 Richmond Avenue, Suite 400 South, Houston, TX 77042 and is primarely engaged in mortgage servicing of non-perfornming FHA and other government-related mortgage loans, among other activities.

12. Defendant Joe Davila is, and at all relevant times was, the President and Chief Exacutive Officer of Selene Finance LP. Defendant Joe Davila is an individual who exerts sufficient control and dominance over the Selene Finance LP and misuses the corporate structure for personal gain and to avoid personal responsibility.

13. Defendant Hilary Jackson is , and at all relevant times was, a Chief Operating Officer of Selene Finance LP. Defendant Hilary Jackson is an individual who exerts sufficient control and dominance over the Selene Finance LP and misuses the corporate structure for personal gain and to avoid personal responsibility.

## FACTUAL ALLEGATIONS

14. Sometime prior to March 2020, Defendants acquired the servicing rights to Plaintiffs's mortgage loan, secured by Plaintiff's primary residence in Chula Vista, California. At the time of the servicing rights transfer, Plaintiffs' mortgage was in default, as this term is defined in the underlying loan contract for the mortgage in question. Accepting defaulted mortgage loans, like Plaintifs', for servicing is a business choice made by Defendants and such choice is drven by much higer servicing fees, associated with servicing defaulted / non-performig mortgage loans, as compared to fees charged for servicing performing/non-defaulted loans.

15. By accepting Plantiffs' loan in default for further servicing, Defendants waived any and all already narrow protections carved out for non-default mortgage servicers under FDCPA, and therefore are "debt collectors" as defined by the FDCPA, 15 U.S.C. § 1692a(6)(F). Simply put, in the pursuit of higher profits, Defendants willingly accepted a debt collectors' status.

16. Long before COVID-19 pandemic started, the original default on the mortgage loan in question was curred by Plaintiffs.

*First Application for Loss Mitigation / Forebearance*

17. When the nationwide COVID-19 emergency was declared on On March 13, 2020, Plaintiffs were current on the mortgage in question, with the next payment due for March 2020.

18. Experiencing COVID-related loss of income and corresponding financial hardship, on 4/28/2020 Plaintiffs mailed to Defendants an application for a temporary 180-day forbearance, outlining specific COVID-related reasons for such request. Plaintiffs application for loss mitigation / forebearance (APPLICATION 1) was delivered to Defendants place of business on 5-4-2020 (USPS tracking number 9405-5036-9930-0351-6338-64)

19. The receipt of the loss mitigation application triggered various statutory obligations on the part of the Defendants. Specifically, as outlined in RESPA (12 CFR § 1024.41 (b)(2)):

> (2) **Review of loss mitigation application submission** -
> (i) **Requirements.** If a servicer receives a loss mitigation application 45 days or more before a foreclosure sale, a servicer shall:
> (A) Promptly upon receipt of a loss mitigation application, review the loss mitigation application to determine if the loss mitigation application is complete; and
> (B) Notify the borrower in writing within 5 days (excluding legal public holi days, Satur days, and Sun days) after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete. If a loss mitigation application is incomplete, the notice shall state the additional documents and information the borrower must submit to make the loss mitigation application complete and the applicable date pursuant to paragraph (b)(2)(ii) of this section. The notice to the borrower shall include a statement that the borrower should consider contacting servicers of any other mortgage loans secured by the same property to discuss available loss mitigation options.
> (ii) **Time period disclosure.** The notice required pursuant to paragraph (b)(2)(i)(B) of this section must include a reasonable date by which the borrower should submit the documents and information necessary to make the loss mitigation application complete.

20. Defendants simply ignored all of their obligations outlined above, violating multiple provisions of RESPA in the process. Specifically, with respect to Plaintiffs first application for loss mitigation (APPLICATION 1):

PAGE 4 OF 13

21. Defendants failed to acknowledge the receipt of the loss mitigation application within the time frame outlined in the law or ever, directly violating requirements outlined in 12 CFR § 1024.41 (b)(2)(i)(B) (RESPA violation 1)

22. Defendants failed to review Plaintiffs application to determine if the application is complete or incomplete, directly violating requirements outlined in 12 CFR § 1024.41 (b)(2)(i)(A) (RESPA violation 2)

23. Defendants failed to notify Plaintiffs as to the determined status of Plaintiffs loss mitigation application (complete vs. incomplete) and corresponding next steps in the loss mitigation process, directly violating requirements outlined in 12 CFR § 1024.41 (b)(2)(i)(B) (RESPA violation 3)

24. Defendants failed to evaluate Plaintiffs application for all loss mitigation options available to Plaintiffs, directly violating requirements outlined in 12 CFR § 1024.41 (c)(1)(i) (RESPA violation 4)

25. Defendants failed to provide Plaintiffs with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage, directly violating requirements outlined in 12 CFR § 1024.41 (c)(1)(ii) (RESPA violation 5)

26. Defendants failed to offer short-term loss mitigation options to the Plaintiff, including those available based upon an evaluation of an incomplete loss mitigation application, directly violating requirements outlined in 12 CFR § 1024.41 (c)(2)(iii) (RESPA violation 6).

27. It is also clear from the text of the CARES Act, that due to the emergency nature of COVID-19 disaster, the forebearance was designed to be as easy as possible, requiring as little as oral request to get done, so, as of the day of Plaintiffs' loss mitigation request, there was no such thing as "incomplete application for loss mitigation" in the context of CARES Act and COVID-related hardships. From the CARES Act:

> (c) REQUIREMENTS FOR SERVICERS.—
> (1) IN GENERAL.—Upon receiving a request for forbearance from a borrower under subsection (b), the servicer shall with no additional documentation required other than the borrower's attestation to a financial hardship caused by the COVID–19 emergency and with no fees, penalties, or interest (beyond the amounts scheduled or calculated as if the borrower made all contractual payments on time and in full under the terms of the mortgage contract) charged to the borrower in connection with the forbearance, provide the forbearance for up to 180 days, which may be extended for an additional period of up to 180 days at the request of the borrower, provided that, the borrower's request for an extension is made during the covered period, and, at the borrower's request, either the initial or extended period of forbearance may be shortened.

PAGE 5 OF 13

28. Finally, with regards to Plaintiffs APPLICATION1 dated 4-28-202, Defendants failed to offer <u>any</u> COVID-19-related loss mitigation option to the Plaintiff, directly violating requirements outlined in 12 CFR § 1024.41 (c)(2)(v) (RESPA violation 7), and leaving the inevitable foreclosure and corresponding homelessness as the only option for Plaintiffs family.

*First Notice of Error*

29. Frustrated by the lack of any meaningfull progress on loss mitigation / mortgage forebearance application, on 6-22-2020 Plaintiffs mailed to Defendants a formal Notice of Error (NOE1), outlining continued faulire to process loss mitigation / forebearance application as a clear servicing error on the part of Defendants.

30. The formal Notice of Error, as defined at 12 CFR § 1024.35, is a communication from the borrowers to their mortgage loan servicer about specific servicing error on the mortgage account.

31. Notice of Error must:

    a) be in writing,

    b) include the name of the borrower,

    c) include information that enables the servicer to identify the borrower's mortgage loan account,

    d) identify the error the borrower believes has occurred, and

    e) be mailed to a specific address, designated by the servicer for receiving Notices of Error

32. All of the above elements were present in the Notice of Error mailed by Plaintiffs to Defendants on 6-22-2020, and the document itself was clearly titled as "Notice of Error";

33. Nevertheless, upon receipt of Plaintiffs Notice of Error, Defendants intentionally misrepresented the clear nature of the communication in question in a corrupt attempt to avoid strict regulatory requrements associated with the Notice of Error, by calling Plaintiffs' correspondence a "Request for loan information", instead of "Notice of Error" in their response to it.

34. In furthering of their illegal conduct, Defendants failed to acknowledge the receipt of the Notice of Error as such, directly violating requirements outlined in 12 CFR § 1024.35 (d)(RESPA violation 8). Above-mentioned section requires the specific acknowledgement of the receipt of a Notice of Error as such, and not just acknowledgement of some correspondence received from the borrower. Receipt of the Notice of Error triggers certain obligations on the part of the servicer, while most other correspondence from

borrowers do not. It is important for the predatory mortgage servicers to avoid acknowledging the receipt of the Notice of Error from the borrower to avoid corresponding compliance, and this is exactly what we see here.

35. Furthermore, Defendants failed to correct the error reported in the Notice of Error, directly violating requirements outlined in 12 CFR § 1024.35 (e)(1)(i)(A)(RESPA violation 9)

36. Defendants failed to conduct a reasonable investigation of the error reported in the Notice of Error, directly violating requirements outlined in 12 CFR § 1024.35 (e)(1)(i)(B)(RESPA violation 10)

37. Defendants failed to provide the borrower with a written notification that includes (1) a statement that the servicer has determined that no error occurred, (2) a statement of the reason or reasons for this determination, (3) a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, and (4) information regarding how the borrower can request such documents, each time violating requirements outlined in 12 CFR § 1024.35 (e)(1)(i)(B)(RESPA violations 11, 12, 13, and 14)

38. Additionally, while intentionally misrepresenting the nature of the correspondence received from the borrower to avoid strict compliance requirements, Defendants used a false, deceptive, and misleading representation in connection with the collection of a debt in violation of 15 U.S.C. § 1692e (FDCPA violation 1)

39. Finally, in their half-baked response to Plaintiffs' Notice of Error (NOE1), Defendants used a false, deceptive, and misleading representation in connection with the collection of a debt in violation of 15 U.S.C. § 1692e (FDCPA violation 2), by falsely asserting that Plaintiff's loan does not qualify for the loss mitigation.

*Second Application for Loss Mitigation / Forebearance*

40. After no meaningfull answer was received from Defendants to the initial loss mitigation application dated 4/28/2020 or Notice of Error dated 6/22/2020, and with no end in sight for the COVID-19 worldwide disaster, on August 10, 2020 Plaintiffs mailed to Defendants yet another application for loss mitigation/forebearance. (hereinafter APPLICATION 2).

41. On August 14, 2020, Defendants acknowledged the receipt of Plaintiffs APPLICATION 2 by mailing the letter to the Plaintiffs' stating, in part:

*" Dear Mortgagor(s):*
*We are in receipt of your application for assistance. Your application is determined to be facially complete with regard to the information we require to evaluate a loss mitigation application and we expect to complete our evaluation of your application in 30 days of the date it was received. (…) We will make a decision on your request no later than 09/13/2020.(…)"*

42. "Facially Complete Application" for assistance is a very specific mortgage industry term as RESPA § 1024.41(c)(2)(iv) defines it: a loss mitigation application shall be considered facially complete when a borrower submits all the missing documents and information (...) and when no additional information is requested (...). Simply put, after the review of the Plaintifs application for loss mitigation, <u>Denedants themselves determined there is no additional paperwork needed to process the request.</u>

43. Needless to say, Defendants failed to live up to their own 9/13/2020 APPLICATION 2 response deadline as well as statutory time requirements on handling a loss mitigation application. Specifically, with regards to Plaintiffs' APPLICATION 2:

44. Defendants failed to evaluate Plaintiffs application for <u>all</u> loss mitigation options available to Plaintiffs, directly violating requirements outlined in 12 CFR § 1024.41 (c)(1)(i) (RESPA violation 15)

45. Defendants failed to provide Plaintiffs with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage, directly violating requirements outlined in 12 CFR § 1024.41 (c)(1)(ii) (RESPA violation 16)

46. Defendants failed to offer short-term loss mitigation options to the Plaintiff, including those available based upon an evaluation of an incomplete loss mitigation application, directly violating requirements outlined in 12 CFR § 1024.41 (c)(2)(iii) (RESPA violation 17).

47. Furthermore, oral declaration of the hardship is all that was required under the CARES Act to initiate mortgage forebearance, so the whole "processing" of Plaintiffs application by the Defendants was a sharade.

48. Additionally, with regards to Plaintiffs APPLICATION 2 dated 8-10-2020, Defendants failed to offer <u>any</u> COVID-19-related loss mitigation option to the Plaintiff, directly violating requirements outlined in 12 CFR § 1024.41 (c)(2)(v) (RESPA violation 18), and moving Plaintiffs family to the brink of losing the house.

49. Ultimately, on December 4th, 2020, after having completed application package in their hands since August 2020, Defendants turned Plaintiffs's loss mitigation application down for aledgedly failing to submit some phantom paperwork Defendants never asked for and did not need for precessing.

*Second Notice of Error*

50. After Defendants failed to process Plaintiffs application for assstance by 9/13/2020 statutory deadlne, on 9/22/2020 Plaintiffs mailed Defendants their second Notice of Error (NOE2), outlining failure to process Plaintiffs' loss mitigation applications as a clear servicing error on the part of Defendants.

51. Defendants received Plaintiffs second Notice of Error from plaintiffs via USPS certified mail (tracking # 9405503699300035712441) shortly thereafter.

52. As with the first Notice of Error, the second one had all the elements of the Notice of Error and was clearly titled as such.

53. True to the established pattern and practice, Defendants once again intentionally misrepresented the clear nature of the communication in question in a corrupt attmpt to avoid strict regulatory requrements associated with the Notice of Error, by calling Plaintiffs' Notice of Error a "correspondence requesting information", instead of "Notice of Error" in their response to it. Needless to say, Plaintiffs's second "Notice of Error" went unanswerred, with the loss mitigation application in question ultimately getting turned down on 12-4-2020, as outlined in paragraph 49 of this complaint.

54. With regards to Plaintiff's second Notice of Error (NOE2), Defendants failed to acknowledge the receipt of the Notice of Error as such, directly violating requirements outlined in 12 CFR § 1024.35 (d)(RESPA violation 18).

55. Furthermore, Defendants failed to correct the error reported in the second Notice of Error, directly violating requirements outlined in 12 CFR § 1024.35 (e)(1)(i)(A)(RESPA violation 19)

56. Defendants failed to conduct a reasonable investigation of the error reported in the second Notice of Error, directly violating requirements outlined in 12 CFR § 1024.35 (e)(1)(i)(B)(RESPA violation 20)

57. With regards to NOE2, Defendants failed to provide the borrower with a written notification that includes (1) a statement that the servicer has determined that no error occurred, (2) a statement of the reason or

reasons for this determination, (3) a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, and (4) information regarding how the borrower can request such documents, each time violating requirements outlined in 12 CFR § 1024.35 (e)(1)(i)(B)(RESPA violations 21, 22, 23, and 24)

58. Additionally, while intentionally misrepresenting the nature of the correspondence received from the borrower to avoid strict compliance requirements, Defendants used a false, deceptive, or misleading representation in connection with the collection of a debt in violation of 15 U.S.C. § 1692e (FDCPA violation 3)

59. Finally, oral declaration of the COVID-related hardship is all that was required under the CARES Act to get the forebearance done, so the whole "processing" of Plaintiffs application from 8-14-2020 when it was received by Defendants to 12-4-2020 when it was turned down was, once again, an ugly 4 month sharade played by Defendants with foreclosure and homelessness for Plaintiffs family as an inevitable final act.

*Third Notice of Error*

60. On 12-1-2020, Plaintiff mailed to the Defendants a third Notice of Error (NOE3), unrelatd to the loss mitigation issue discussed earlier. The reason for yet another Notice of Error was that Defendant's incorrectly changed the adjustable interest rate and term of payment on the Plaintiffs' mortgage effective December 1st 2020, instead of loan anniversery on 5/1/2021, when such change might be due.

61. This premature rate/term change caused Plaintiffs mortgage payment to increase from current $833.85 per month to $1,605.95 per month, causing actual damages of $772.10 per month for each month from December 2020 to May 2021, or $772.10 x 5 month = $3,860.50 total.

62. As with the first two Notices of Error, the third one had all the elements of the Notice of Error and was clearly titled as such.

63. True to the established pattern and practice, Defendants for the third time intentionally misrepresented the clear nature of the communication in question in a corrupt attmpt to avoid strict regulatory requrements associated with the Notice of Error, by calling Plaintiffs' Notice of Error a "correspondence requesting

information", instead of "Notice of Error" in their response to it. Needless to say, Plaintiffs's third "Notice of Error" went unanswerred and error in question was never corercted.

64. With regards to Plaintiff's third Notice of Error (NOE3), Defendants failed to acknowledge the receipt of the Notice of Error as such, directly violating requirements outlined in 12 CFR § 1024.35 (d)(RESPA violation 25).

65. Furthermore, Defendants failed to correct the error reported in the third Notice of Error, directly violating requirements outlined in 12 CFR § 1024.35 (e)(1)(i)(A)(RESPA violation 26)

66. Defendants failed to conduct a reasonable investigation of the error reported in the third Notice of Error, directly violating requirements outlined in 12 CFR § 1024.35 (e)(1)(i)(B)(RESPA violation 27)

67. With regards to NOE3, Defendants failed to provide the borrower with a written notification that includes (1) a statement that the servicer has determined that no error occurred, (2) a statement of the reason or reasons for this determination, (3) a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, and (4) information regarding how the borrower can request such documents, each time violating requirements outlined in 12 CFR § 1024.35 (e)(1)(i)(B)(RESPA violations 28, 29, 30, and 31)

68. Additionally, while intentionally misrepresenting the nature of the correspondence received from the borrower to avoid strict compliance requirements, Defendants used a false, deceptive, or misleading representation in connection with the collection of a debt in violation of 15 U.S.C. § 1692e (FDCPA violation 4)

69. Handling of the Plaintiffs third Notice of Error on the unrelated subject exactly the same corrupt way as the first two Notices of Error, clearly demonstrates the pattern of non-compliance Defendants have created and continue to operate in.

70. Furthermore, dozens of court cases and hundreds of online reviews are currently describing same patterns of non-compliance as Plaintiffs experienced first hand, so pattern and practice of non-compliance on the part of the Defendants is self-evident to anyone with the internet access.

## CAUSES OF ACTION

### COUNT 1

### Real Estate Settlement Procedures Act (RESPA)

### 12 U.S.C. §§ 2601 Et Seq.

71. Plaintiffs repeat, re-allege, and incorporate by reference, all other paragraphs.

72. The foregoing acts and omissions constitute numerous and multiple violations of the RESPA, including but not limited to each and every one of the abovecited provisions of the RESPA, 12 U.S.C. §§ 2601 Et Seq.

73. As a result of each and every violation of the RESPA, Plaintiffs are entitled to any actual damages, statutory damages in an amount of $2,000 per violation, punitive and other damages, reasonable attorney's fees and costs of litigation, among other remedies, from the Defendants.

### COUNT 2

### Fair Debt Collection Practices Act (FDCPA)

### 15 U.S.C. §§ 1692 Et Seq.

74. Plaintiffs repeat, re-allege, and incorporate by reference, all other paragraphs.

75. The foregoing acts and omissions constitute numerous and multiple violations of the FDCPA, including but not limited to each and every one of the abovecited provisions of the FDCPA, 15 U.S.C. §§ 1692 Et Seq.

76. As a result of each and every violation of the FDCPA, Plaintiffs are entitled to any actual damages, statutory damages in an amount up to $1,000, punitive and other damages, reasonable attorney's fees and costs of litigation, among other remedies, from the Defendants.

### PRAYER FOR RELIEF

77. WHEREFORE, Plaintiffs prays that judgment be entered against Defendant, and Plaintiffs be awarded damages from Defendant, as follows:

- An award of actual damages pursuant to RESPA and FDCPA
- An award of statutory damages of $2,000 per violation pursuant to RESPA
- An award of statutory damages of $1,000 pursuant to FDCPA

- An award of costs of litigation and reasonable attorney's fees pursuant to RESPA and FDCPA
- An award of punitive damages of $1,000,000 from Defendant Selene Finance LP
- An award of punitive damages of $100,000 each from Defendants Joe Davila and Hilary Jackson
- A Court ordered permanent revocation of CA Dept of Financial Protection license number 4130818 issued to Defendant Selene Finance LP, to prevent Defendant Selene Finance LP from running predatory mortgage servicing operation and causing further damage to homeowners here in California.
- A five year ban imposed on Defendant Joe Davila, preventing him from acting as an officer or other corporate executive of any mortgage-related business.
- A lifetime ban imposed on Defendant Hilary Jackson, preventing her from acting as an officer or other executive of any mortgage-related business, given her past role as a policymaker at Countrywide Home Loans, that resulted in massive mortgage meltdown less that a decade ago.
- Other special, general, compensatory, and punitive damages to be determined at trial.

Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

DATED: March 23rd, 2021

Respectfully Submitted,

/s/ Victoria Amelina
VICTORIA AMELINA , Plaintiff Pro Se

/s/ Michael Sapelkin
MICHAEL SAPELKIN , Plaintiff Pro Se

1355 Nicolette Ave Unit 1313, Chula Vista, CA 91913
(619) 721-3302
Vita.amelina@gmail.com

```
DUPLICATE

Court Name: USDC California Southern
Division: 3
Receipt Number: CAS128454
Cashier ID: akukura
Transaction Date: 03/23/2021
Payer Name: Michael Sapelkin
------------------------------------
CIVIL FILING FEE- NON-PRISONER
 For: Michael Sapelkin
 Case/Party: D-CAS-3-21-CV-000512-001
 Amount:         $402.00
------------------------------------
CREDIT CARD
 Amt Tendered:  $402.00
------------------------------------
Total Due:       $402.00
Total Tendered:  $402.00
Change Amt:      $0.00


There will be a fee of $53.00
charged for any returned check.
```