UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTORIA A. AMELINA and MICHAEL S. SAPELKIN, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>SELENE FINANCE LP, a Delaware Limited Partnership Company; JOE DAVILA; and HILARY JACKSON,<br><br>Defendants. | Case No.: 21-cv-00512-CAB-LL<br><br>**ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>[Doc. No. 23] |

This matter is before the Court Defendants' motion to dismiss the first amended complaint ("FAC"). The deadline for Plaintiffs' opposition to the motion has passed without any filing from Plaintiffs. The lack of opposition permits the Court to grant the motion a dismiss the FAC without prejudice on that basis alone. For the following reasons, however, the motion is granted on its merits, and the FAC is dismissed with prejudice.

**I.  Background**

On March 23, 2021, Plaintiffs filed the original complaint against Defendants (1) Selene Finance LP ("Selene"), (2) Selene's President and Chief Executive Officer, Joe Davila, and (3) Selene's Chief Financial Officer, Hilary Jackson. Defendants moved to dismiss and strike the complaint, and the Court granted those motions and gave Plaintiffs leave to amend at a hearing on June 17, 2021. On July 30, 2021, Plaintiffs filed the FAC.

Defendants filed a motion to dismiss on August 16, 2021, and Plaintiffs did not file an opposition.

Notably, the FAC appears to have omitted numerous allegations that were in the original complaint without adding any new factual allegations. It nevertheless asserts the same two claims: (1) violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.*; and violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq,* arising out of Plaintiffs' efforts to obtain a mortgage loan forbearance as a result of financial hardship they allegedly incurred due to the COVID-19 pandemic. Aside from identifying the three defendants at the outset, the complaint does not make any factual allegations specific to any of particular Defendant, making allegations only against "Defendants" collectively.

According to the FAC, "sometime prior to March 2020, Defendants acquired the servicing rights to Plaintiffs' mortgage loan . . . ." [*Id.*] In March 2020, Plaintiffs allegedly were current on the mortgage loan, but "experienced loss of income, corresponding financial hardship, and applied for loss mitigation with Defendants." [*Id.* at ¶ 15.] On April 28, 2020, Plaintiffs "submitted their first written application for loss mitigation and corresponding supporting documents." [*Id.* at ¶ 20.] Defendants allegedly ignored this request. [*Id.* at ¶¶ 22-23.]

On June 22, 2020, "Plaintiffs mailed to Defendants a formal Notice of Error (NOE1), . . . outlining continued failure to process loss mitigation application as a clear servicing error on the part of Defendants." [*Id.* at ¶ 37.] Defendants allegedly "failed to acknowledge receipt of the Notice of Error," and otherwise failed to take action in response to the notice. [*Id.* at ¶ 38.] Somewhat inconsistently with this allegation that Defendants did not acknowledge the notice, the FAC also conclusorily alleges that "in their communications with Plaintiffs on the matter Defendants intentionally misstated the status of the loan and the status of the loss mitigation application in question." [*Id.* at ¶ 40.]

On August 10, 2020, "Plaintiffs mailed to Defendants [] another application for loss mitigation." [*Id.* at ¶ 23.] Defendants responded to this application with a letter stating

that the "application is determined to be facially complete with regard to the information we require to evaluate a loss mitigation application and we expect to complete our evaluation of your application in 30 days of the date it was received," and that they would "make a decision on your request no later than 9/13/2020." [*Id.* at ¶ 24.]

When Plaintiffs did not receive a further response from Defendants by September 13, 2020, they "mailed Defendants their second Notice of Error (NOE2) . . . outlining failure to process Plaintiffs' loss mitigation applications as a clear servicing error on the part of Defendants." [*Id.* at ¶ 41.] As with the first notice of error, Defendants allegedly "failed to acknowledge the receipt of" this second notice while at the same time making "intentional misstatements" in their communications with Plaintiffs about it. [*Id.* at ¶¶ 44, 45.]

On December 1, 2020, "Plaintiff mailed to the Defendants a third Notice of Error (NOE3), unrelated to the loss mitigation issue discussed earlier." [*Id.* at ¶ 46.] According to the FAC, the error asserted in this notice "was that Defendant's [sic] incorrectly changed the adjustable interest rate and term of payment on the Plaintiffs' mortgage effective December 1st 2020, instead of loan anniversary on 5/1/2021, when such change might be due." [*Id.* at ¶ 48.] As with the prior notices of error, Defendants allegedly both failed to acknowledge this notice while also making intentional misstatements in their communications with Plaintiffs about it. [*Id.* at ¶¶ 51, 52.]

In their prayer for relief, Plaintiffs seek actual and statutory damages. As for actual damages, the FAC alleges that Defendants' actions with respect to the first notice of error "resulted in actual damages in a form of foreclosure related fees and costs charged to the account, inaccurate and incorrect loan [sic], inconvenience and emotional distress." [*Id.* at ¶¶ 39, 49.] With respect to the third notice of error, the FAC alleges that the allegedly premature change to the interest rate caused Plaintiff's mortgage payment to increase from $833.85/month to $1,605.95/month, causing a total of $3,860.50 in damages (5 months x $772.10), along with "inconvenience and emotional distress." The FAC does not allege,

however, that Plaintiffs actually paid this allegedly improperly increased mortgage payment for the months of December 2020 through April 2021.

## II. Legal Standards

The familiar legal standards apply to the motion to dismiss. To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Thus, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). On the other hand, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Nor is the Court "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotation marks omitted).

## III. Discussion

### A. Claims by Michael Sapelkin

Section 6 of RESPA specifically provides that "[w]hoever fails to comply with any provision of this section shall be liable to the *borrower* for each such failure." 12 U.S.C. § 2605(f) (*emphasis* added). Thus, "[c]ourts have uniformly barred non-borrowers from asserting RESPA claims." *Aldana v. Bank of Am.*, N.A., No. CV 14-7489-GHK FFMX, 2014 WL 6750276, at *3 (C.D. Cal. Nov. 26, 2014). The FAC concedes that Sapelkin is not a party to either the note or the deed of trust, alleging instead that he qualifies as a borrower under RESPA because he is a "confirmed successor in interest," who is treated

as a borrower. *See* 12 C.F.R. § 1024.30(d) ("A confirmed successor in interest shall be considered a borrower for purposes of § 1024.17 and this subpart."). A "[c]onfirmed successor in interest means a successor in interest once a servicer has confirmed the successor in interest's identity and ownership interest in a property that secures a mortgage loan . . . ." 12 C.F.R. § 1024.31. The FAC does not allege facts demonstrating that Selene confirmed Sapelkin's identity and ownership interest in the property securing the mortgage. Accordingly, because the FAC does not allege facts that, if true, would support the conclusion that Sapelkin is either a borrower directly or a borrower by virtue of being a "confirmed successor in interest," Sapelkin lacks standing to bring a RESPA claim.

Likewise, the FAC does not allege any debt collecting activity directed at Sapelkin. He is not a borrower on the mortgage loan, and there are no allegations that Defendants contacted Sapelkin in connection with collecting on Amelina's mortgage loan. Therefore, the FAC also fails to state a claim for any violations of the FDCPA as to Sapelkin. *Cf. Green v. Central Mortgage Co.*, 2015 WL 5157479, *4 (N.D. Cal. 2015) ("Generally, [a] person who is not a party to a contract does not have standing either to seek its enforcement or to bring tort claims based on the contractual relationship. Courts thus have dismissed foreclosure-based claims – like [the plaintiff's] negligent misrepresentation, fraud, wrongful foreclosure, UCL, cancellation of deed, and declaratory relief claims – by persons who were not parties to mortgage loans.") (citations and internal quotation marks omitted).

In light of the foregoing, any claims by Sapelkin are dismissed.

### B. Claims Against Individual Defendants

The FAC makes no factual allegations specific to any of the three defendants. Rather, it identifies the three defendants (Selene, its CEO and its former CFO), and then just makes allegations about "Defendants'" actions (or lack thereof). The complaint appears to attempt to hold the individuals liable by piercing the veil, but it makes only conclusory allegations that the Davila and Jackson "exert sufficient control and dominance over the Selene Finance LP . . . and misuse[] the corporate structure for personal gain and to avoid personal responsibility." [Doc. No. 22 at ¶¶ 12-13.] There are no allegations that

either Davila or Jackson had any personal involvement in the servicing of Amelina's mortgage. Nor are there any factual allegations that would support piercing the veil against Davila and Jackson. Accordingly, the claims against Davila and Jackson are dismissed.

### C. Amelina's RESPA Claim

"To state a claim under RESPA, plaintiffs must allege facts showing both the defendant's failure to comply with RESPA and actual damages to the borrower as a result of the failure." *Townsend v. Wells Fargo Bank, N.A.*, No. 18-CV-07382-NC, 2019 WL 4145464, at *5 (N.D. Cal. Aug. 30, 2019) (internal quotation marks and citation omitted), *aff'd*, 831 F. App'x 338 (9th Cir. 2020). The vague and conclusory allegation of the types of damages purportedly suffered by Amelina as a result of the allegedly inadequate responses to the notices of error do not satisfy this requirement. The Ninth Circuit has yet to decide whether emotional distress satisfies the actual damages requirement for a RESPA claim, but even assuming it does, the FAC fails to include any plausible factual allegations how Defendants' failure to respond to the notices of error (assuming such failure even qualifies as a RESPA violation), and not Selene's efforts to foreclose, was the proximate cause of foreclosure fees or emotional distress suffered by Plaintiff. *Cf. York v. Bank of Am.*, No. 14-CV-02471-RS, 2015 WL 3561723, at *6 (N.D. Cal. June 8, 2015) ("Lacking averments of actual losses, let alone any link between such losses and [Defendant's] conduct, plaintiffs' RESPA claim as pleaded in the FAC must be dismissed.).

Moreover, any violations stemming from the loan modification requests do not trigger RESPA obligations on the part of Selene. "RESPA requires the servicer of a federally related mortgage loan to provide a timely written response to inquiries from borrowers regarding the servicing of their loans." *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 665 (9th Cir. 2012). However, "the statutory duty to respond does not arise with respect to *all* inquiries or complaints from borrowers to servicers." *Id.* at 666 (*emphasis* in original). "[R]equests for a loan modification or challenges to a loan's validity and terms fall beyond the scope of Section 2605(e)(1)(A)'s requirement that inquiries concern loan servicing issues." *York*, 2015 WL 3561723, at *5. "[B]ecause Plaintiffs' letters to [Selene]

6

. . . requested modification of various loan and mortgage documents, they were not qualified written requests relating to the servicing of Plaintiffs' loan. . . . 12 U.S.C. § 2605 does not require a servicer to respond to such requests. . . ." *Medrano,* 704 F.3d at 667–68. Thus, Amelina may not maintain a RESPA claim based on the first and second notices of error for this reason as well.

As for the third notice of error, although it appears possible that it could have triggered a RESPA response obligation because it concerned a purported error in the calculation of the correct interest rate and monthly payment amount, a RESPA claim based on this notice still fails because the FAC does not adequately allege actual damages. Plaintiffs allege that this error resulted in damages of $3860, which is the difference between what they think they should have owed and the amount Selene calculated they owed. These are only damages, however, if Plaintiffs actually paid the amount Selene said was due and if Selene actually was incorrect in its calculation. The FAC does not allege that Plaintiffs actually paid the purportedly incorrect amount, meaning there are no alleged damages resulting from an alleged miscalculation.

Accordingly, for all of the foregoing reasons, the FAC fails to state a claim for violation of RESPA by Selene.

### D. Amelina's FDCPA Claim

"To state an FDCPA claim, a complaint must plead four elements: (1) the plaintiff is a 'consumer' within the meaning of 15 U.S.C. § 1692a(3); (2) the debt at issue arises out of a transaction entered into for personal purposes; (3) the defendant is a debt collector within the meaning of § 1692a(6); and (4) the defendant violated a provision of the FDCPA." *Peebles v. Seterus, Inc.*, No. 219CV00242JAMKJN, 2019 WL 4464126, at *2 (E.D. Cal. Sept. 18, 2019). Here, the FAC alleges that Selene was the servicer on Amelina's mortgage loan. [Doc. No. 22 at ¶ 14.] It is well-established that . . . a loan servicer is not a 'debt collector' under the FDCPA." *Okada v. Green Tree*, No. C-10-0487 JCS, 2010 WL 1573781, at *3 (N.D. Cal. Apr. 19, 2010). For this reason alone, the FAC fails to state a claim against Selene for violation of the FDCPA.

Moreover, even if Selene qualified as a debt collector under the FDCPA, the FAC fails to state a FDCPA claim with respect to at least the first and second notices of error. The gravamen of the FAC is that Selene ignored Amelina's loss mitigation requests. In other words, the FAC primarily complains of Selene's *lack* of communication with Amelina. Selene's alleged actions, or lack thereof, with respect to Amelina's loss mitigation requests were not "false, deceptive, or misleading representation[s] or means in connection with the collection of any debt." 15 U.S.C. § 1692e; *see generally Santoro v. CTC Foreclosure Service*, 12 Fed. Appx. 476, 480 (9th Cir. 2001) ("A letter suggesting loan workout options is not seeking to collect a debt."); *Bourgeois v. Ocwen Loan Servicing, LLC*, No. 15CV1655-GPC(BLM), 2016 WL 245526, at *8 (S.D. Cal. Jan. 21, 2016) (holding that "a letter simply acknowledging receipt of an inquiry, a mortgage assistance/hardship application, a mortgage assistance resources letter, and a letter regarding a borrower's request for mortgage assistance and application, . . . do not constitute 'debt collection' activity and cannot be a basis for a FDCPA claim.").

**IV.   Disposition**

For the foregoing reasons, the motion to dismiss the FAC is **GRANTED**. Further, in light of Plaintiffs' failure to allege any additional facts to remedy the deficiencies in their original complaint, and their lack of opposition to the instant motion, the Court concludes that any further amendment would be futile. Accordingly, the FAC is **DISMISSED WITH PREJUDICE**. This case is **CLOSED**.

It is **SO ORDERED**.

Dated:  September 20, 2021

_____
Hon. Cathy Ann Bencivengo
United States District Judge